ACCEPTED
15-25-00117-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/20/2025 5:07 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00117-CV

# In the Court of Appeals
# for the Fifteenth Judicial District

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
10/20/2025 5:07:56 PM
CHRISTOPHER A. PRINE
Clerk

———

THE STATE OF TEXAS,

*Appellant/Cross-Appellee,*

*v.*

PATRICK COX, FOR HIMSELF AND AS AGENT FOR AOC RANCHES, LLC; TEAM ADVERTISING SERVICES, INC.; CCLHR ENTERPRISES, LLC; AND VPIZZA RESTAURANT 001, LLC,

*Appellees/Cross-Appellants.*

———

On Appeal from the
419th Judicial District Court, Travis County

———

## REPLY BRIEF FOR THE STATE OF TEXAS

———

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

WILLIAM R. PETERSON
Solicitor General

JACOB C. BEACH
Assistant Solicitor General
State Bar No. 24116083
Jacob.Beach@oag.texas.gov

ALI THORBURN
Assistant Attorney General

Counsel for Appellant

# Identity of Parties and Counsel

**Appellant:**
The State of Texas

**Appellate and Trial Counsel for Appellant:**
Ken Paxton
Brent Webster
William R. Peterson
Jacob C. Beach (lead counsel)
Ali Thorburn
Cole P. Wilson

Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-6407
Jacob.Beach@oag.texas.gov

**Appellees:**
Patrick Cox, for himself and as agent for AOC Ranches, LLC; Team Advertising
Services, Inc.; CCLHR Enterprises, LLC; and VPizza Restaurant 001, LLC

**Appellate and Trial Counsel for Appellees:**
Reese Baker
Baker & Associates
950 Echo Ln Ste 300
Houston, TX 77024-2824
(713) 979-2251
Reese.Baker@bakerassociates.net

# TABLE OF CONTENTS

Page

Identity of Parties and Counsel ...................................................................... i

Index of Authorities ..................................................................................... iii

Introduction ................................................................................................. 1

Argument ..................................................................................................... 2

    I.   Only the State Takings Claim Remains. ..................................... 2

        A.  Cox abandoned all but the state takings claim. ................... 2

        B.  Limitations bars Cox's personal property claims. ............... 4

    II.  Cox's State Takings Claim Fails ................................................ 10

        A.  Cox lacks standing. ........................................................... 10

        B.  Cox cannot establish a taking by the State. ...................... 15

Prayer ......................................................................................................... 16

Certificate of Compliance .......................................................................... 17

**Cases:**

*Abbott v. Mexican Am. Legis. Caucus, Tex. House of Representatives*,
647 S.W.3d 681 (Tex. 2022) ...................................................................16

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*,
178 F.3d 350 (5th Cir. 1999) ................................................................ 14

*Bennet v. Spear*,
520 U.S. 154 (1997) ............................................................................. 14

*Burns v. Schobel*,
2022 WL 3638215 (Tex. App.—Austin Aug. 23, 2022, no pet.)........................... 4

*Center for Biological Diversity v. United States Environmental Protection Agency*,
937 F.3d 533 (5th Cir. 2019) ................................................................ 14

*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013)............................................................................. 14

*Curadev Pharma Pvt. Ltd. v. Univ. of Tex. Sw. Med. Ctr.*,
2025 WL 2414661 (Tex. App.—15th Dist. Aug. 21, 2025, pet. filed) .......... 10, 16

*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*,
482 U.S. 304 (1987) ............................................................................. 7

*Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d
474 (Tex. 2014).................................................................................. 6

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*,
962 S.W.2d 507 (Tex. 1998)................................................................... 7

*Klumb v. Hous. Mun. Emps. Pension Sys.*,
458 S.W.3d 1 (Tex. 2015)......................................................................16

*KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*,
988 S.W.2d 746 (Tex. 1999) ................................................................. 6

*Lowenberg v. City of Dallas*,
168 S.W.3d 800 (Tex. 2005) ............................................................... 6, 8

*Lubbock Cnty. v. Trammel's Lubbock Bail Bonds*,
80 S.W.3d 580 (Tex. 2002)............................................................... 6, 8, 9

*Mission Consol. Indep. Sch. Dist. v. Garcia*,
372 S.W.3d 629 (Tex. 2012)..............................................................10-11

*Murthy v. Missouri*,
603 U.S. 43 (2024) ............................................................................. 14

*In re Off. of Att'y Gen.*,
   2025 WL 2414653 (Tex. App.—15th Dist. Aug. 21, 2025) .............................. 12

*Off. of Pub. Util. Couns. v. Pub. Util. Comm'n of Tex.*,
   878 S.W.2d 598 (Tex. 1994)........................................................................ 9

*Rivera v. Sonnenschein*,
   708 S.W.3d 294 (Tex. App.—Austin [15th Dist.] 2025, pet. denied) ................16

*Salazar v. State*,
   2016 WL 6124640 (Tex. App.—Corpus Christi Oct. 2016, no pet.) ................. 3

*Schneider Nat. Carriers, Inc. v. Bates*,
   147 S.W.3d 264 (Tex. 2004) ....................................................................... 6

*Tex. Dep't of Crim. Just. v. Rangel*,
   595 S.W.3d 198 (Tex. 2020) .................................................................. 11, 12

*Tex. Dep't of Parks & Wildlife v. Miranda*,
   133 S.W.3d 217 (Tex. 2004) ...........................................................11, 13, 16

*Texas Dep't of Transportation v. Self*,
   690 S.W.3d 12 (Tex. 2024) .........................................................................15

*Town of Shady Shores v. Swanson*,
   590 S.W.3d 544 (Tex. 2019) .......................................................................11

*United States v. Dickinson*,
   331 U.S. 745 (1947) ................................................................................... 6

*Westgate, Ltd. v. State*,
   843 S.W.2d 448 (Tex. 1992) .................................................................... 7, 8

*Zimmerman v. City of Austin*,
   881 F.3d 378 (5th Cir. 2018)...................................................................... 14

**Constitutional Provision, Statutes and Rules:**

Tex. Const. art. I, § 17.............................................................................. 7, 8

11 U.S.C. § 108(a) ..................................................................................... 5

Tex. Civ. Prac. & Rem. Code § 16.003 ................................................... 4, 6

Tex. R. App. P. 33.1 .................................................................................. 5

Tex. R. Evid. Rule 201(b)............................................................................ 9

# Introduction

This case no longer presents a tangle of theories but a single question. Having disclaimed his reliance on conversion, restitution, and due course of law, Cox now presses only a state-law takings theory. That narrowing simplifies the task before the Court and underscores why this suit should end.

From the outset, Cox's theory has shifted with the wind. He pleaded conversion, restitution, due process, and takings; at the hearing, he focused on a new theory: that injury came from the Receiver transferring assets to the Corporate Trustee. Yet he now insists they were all one and the same—that the State "took" his property. But the record shows that Cox's property was sold by a court-appointed receiver, not seized by the State; that the proceeds exceeded his sworn valuation; and that any loss flowed from his own litigation choices—foregoing a proper supersedeas bond, declining to object to either the sales he now contests or the Corporate Compromise, and waiting years to sue. When pressed on the facts, Cox recasts the law; when pressed on the law, he recasts the facts. What remains is not a coherent constitutional claim but a grievance over how his bankruptcy and receivership concluded.

The Texas Constitution does not waive sovereign immunity for such grievances. It permits suit only for facially valid takings claims—claims showing that the State itself intentionally appropriated property for public use. Here, the State neither seized Cox's assets nor benefited from them. Cox, in any event, was made whole. The only possible injury that remains flows entirely from Cox's own litigation and strategic decisions, not from state action. That is why the trial court should have dismissed the case, and why this Court should do so now.

# Argument

## I. Only the State Takings Claim Remains.

### A. Cox abandoned all but the state takings claim.

Cox filed suit raising claims for conversion, restitution, takings (under the State and Federal Constitutions), and due process (under the State and Federal Constitutions). CR.3-11. The district court granted the State's plea to the jurisdiction as to the federal claims, which are the subject of the cross-appeal, but denied the plea "as to Plaintiff's claims for civil conversion, restitution, and violations of the Texas Constitution's Takings and Due Course of Law clauses." CR.822. The State's opening brief provided (at 26-35) why these claims fail to overcome the State's immunity.

Cox confusingly responds that the State's arguments are "an attempt to recast Cox's claim as restitution or conversion," which are "alternative characterizations of the same conduct: the State took property without compensation." Cox Resp. Br.12, 25. He claims that "the State is not allowed to 'jawbone' a claim a litigant specifically asserts into some other kind of claim the litigant did not assert," *id.* at 25, and urges the court to "look to the substance of the claim, not to the label attached," which he appears to view as only asserting a takings claim, *id.* (citing CR.6-10); *see id.* ("By any name, Cox alleges that the State permanently deprived him of property without compensation; the gravamen of this suit is that the State took Cox's property without compensation."). He concludes by stating that "[i]f Cox is prohibited from recharacterizing claims in an attempt to make an invalid claim look valid, the State is likewise prohibited from mischaracterizing Cox's takings claim as something else, in an effort to see it dismissed." *Id.* at 26.

2

Cox thus views the State's position on the conversion, restitution, and due course claims as improperly mischaracterizing the takings claim. But Cox advanced these independent causes of action throughout this litigation. His petition is entitled "Amended Complaint … For Restitution And Damages, Unconstitutional Taking …, [and] Claims for … Civil Conversion." CR.3 (citation modified). And each page is labeled "Complaint for Restitution." *See, e.g.*, CR.3. The opening paragraph provides that "[t]his complaint is for restitution of property taken from him and … civil conversion." CR.3. His complaint specifically invokes restitution and the elements of that claim, *see, e.g.*, CR.7-8, and prays that the Court award him "restitution to be paid by the State of Texas to Cox," CR.11. That goes for conversion too: His pleading specifically "asserts claims for civil conversion," CR.10, which is also found in the prayer, CR.11. In his briefing and at the hearing, Cox pressed the conversion and restitution claims, but not the due course claim. *See* CR.530 (restitution); CR.532-33 (conversion); RR.31, 41-42 (restitution).

That is why the district court perceived those as individual claims, separate and distinct from the takings claim. CR.822. While it was error to permit them to proceed, it was not error for the district court to interpret Cox as asserting these claims.

Cox's position has two implications for this suit: First, Cox has abandoned the conversion and restitution claims, instead asking this Court to construe them as semantic expressions of the takings claim. *See, e.g.*, *Salazar v. State*, No. 13-15-00583-CR, 2016 WL 6124640, at *2 (Tex. App.—Corpus Christi-Edinburg Oct. 20, 2016, no pet.) (mem. op.) (holding that a party abandoned his previous theory by changing positions on appeal). Second, it shows that this is not a serious suit. A party may

choose to abandon claims on appeal; in doing so, however, Cox asserts that the State is mischaracterizing his litigation posture. This cuts against the entire record, including the district court's decision to expressly permit these claims to proceed independently of the takings claim. On a related note, Cox neither contests the State's recitation of the facts nor responds to the claim that Cox's counsel misled the district court about material facts. The State does not make such assertions lightly, and it provided (at 11-13) a detailed explanation in support. Cox provides no response. The Court should heed the State's notice which, combined with this abandonment, show that this is not a serious suit.

Cox also does not raise or respond to any argument about "Due Course of Law" (or, by alternative wording, due process) and thus abandons those claims as well. *See, e.g.*, *Burns v. Schobel*, No. 03-21-00521-CV, 2022 WL 3638215, at *2 (Tex. App.—Austin Aug. 23, 2022, no pet.) (mem. op.) (holding that a party's focus on a single issue to the exclusion of others constituted abandonment). Because Cox responds only to the state law takings claim, the reply brief accordingly focuses on that sole remaining issue.

### B. Limitations bars Cox's personal property claims.

**1.** The State argued that "[f]or all property except the AOC ranch, the two-year limitation governing personal property applies." State Br.16 (citing Tex. Civ. Prac. & Rem. Code § 16.003). Cox did not bring these claims within the two-year limitation, meaning that the district court erred by permitting them to proceed. *Id.* at 15-17. Cox responds that "[l]imitations is not properly before the Court" because "[t]he State did not obtain a ruling on [it]." Cox Resp. Br.11.

4

The limitations issue is properly before the Court. A party preserves an issue for appeal when it "state[s] the grounds for the ruling … with sufficient specificity to make the trial court aware of the complaint" and "the trial court … rule[s] on the request … either expressly or implicitly." Tex. R. App. P. 33.1(a). The State raised the statute of limitations in its Answer and committed three full pages to this argument in the Combined Jurisdictional Plea and Summary Judgment Motion. CR.47-49.[1] Indeed, Cox responded that limitations were not an issue because of 11 U.S.C. Section 108(a), CR.545, which is what the State addressed (at 17) in the opening brief on appeal. Cox's own briefing shows that the statute of limitations was presented and thus preserved.

Cox now argues that the State did not sufficiently preserve the limitations issue because it did not "obtain a ruling" below. Cox Resp. Br.13. But the trial court implicitly ruled on the issue as to the claims the district court permitted to proceed. CR.822. An implicit ruling suffices. *See* Tex. R. App. P. 33.1(a)(2) (explaining that error is preserved when the trial court has "ruled on the request, objection, or motion, either explicitly or implicitly").

**2.** The State is also correct on the merits. Cox argues that the State "failed to conclusively prove the date Cox's claims accrued" which, according to Cox, occurred "when the judgment against him was reversed and the State refused to return or compensate him for property it seized." Cox Resp. Br.11. The Texas Supreme

---

[1] The Original Answer filed January 2019 is not included in the Clerk's Record, perhaps because it was filed in the Galveston Court before the district court transferred the case to Travis County. CR.837. The State includes it here as an appendix.

Court has explained that "a cause of action accrues when a wrong produces an injury" and "a physical taking causes injury when the property itself is taken." *Lowenberg v. City of Dallas*, 168 S.W.3d 800, 802 (Tex. 2005) (per curiam) (citing *Lubbock Cnty. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002); and *United States v. Dickinson*, 331 U.S. 745, 749-50 (1947)). Because all recognize that "[u]nlike many takings claims, this one does not arise from a case where the State's taking of the property without compensation was wrongful in the first instance," Cox Resp. Br.15-16, a different accrual date must apply.

Where a statute does not specify when accrual occurs, courts look to the common law. *See KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999). "Generally, a cause of action accrues and limitations begins to run when facts exist that authorize a claimant to seek judicial relief." *Schneider Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264, 279 (Tex. 2004), *holding modified by Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474 (Tex. 2014); *accord* CR.48 (State's Brief). That is why the applicable date is July 1, 2014—the date of the Seventh Court's decision—as that is when Cox regained any claim to the property. Cox filed suit on April 14, 2018—well beyond the two-year limit that governs personal property claims. Tex. Civ. Prac. & Rem. Code § 16.003. [2]

Cox again responds with mischaracterizations. First, he claims that "[t]he State suggests that Cox's claim accrued when his property was first seized and sold." Cox

---

[2] Even if the clock began to run on the date the Texas Supreme Court denied review (April 1, 2016), Cox still missed the deadline. CR.246.

Resp. Br.14 (citing State Br.37). That portion of the State's brief explains that receivers act as agents of the court. The briefing on the limitations issue, found at pages 15-17, provides that "[t]he applicable [accrual] date is July 1, 2014—the date of the Seventh Court's decision—as that is when Cox regained any claim to the property." State Br.16. Cox's first argument is thus a mischaracterization.

Cox then erroneously attempts to graft a "refusal" requirement onto the date of accrual. Cox Resp.Br.14. Cox acknowledges the same "accrual" test upon which the State relies. *See id.* ("Limitations generally begins to run when the cause of action accrues, which we have determined means when facts have come into existence that authorize a claimant to seek a judicial remedy." (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998))). Yet he claims "the State's taking of the property … only became wrongful after: (1) the judgment against Cox was reversed; and (2) the State refused to either return Cox's property, or to fully compensate him for its loss." *Id.* at 15-16.

Cox's cited authority does not speak to any "refusal" requirement. He invokes *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304 (1987). But that case held that California must compensate for temporary takings, and the cited passage discusses a general right to compensation under the Federal Constitution. *See id.* at 314-16. He also cites *Westgate, Ltd. v. State*, which examined "whether there can be a taking or damaging under art. I, § 17 where the government has not directly restricted use of the landowner's property." 843 S.W.2d 448, 452 (Tex. 1992). There, after the State announced future plans to expand Highway 290, an owner of an adjacent shopping center sought compensation

7

for harm to his ability to lease the facilitates. *Id.* at 450-51. The Court held that the "property was not taken or damaged within the meaning of Tex. Const. art. I, § 17 prior to" the government's actual acquisition of the property. *Id.* at 456. Neither of these cases speak to a refusal requirement, and Cox provides no other support for the same.

The Texas Supreme Court instead rejected identical logic in *Trammel's*, 80 S.W.3d at 580. There, the Court examined—in a suit for refund of bail bond fees assessed by a county without statutory authority—whether injury accrued upon the challenged payment or whether a claimant must first seek reimbursement, and be rejected by, the county commissioners court. *Id.* The Court explained that, under the presentment view, "a party with a claim against a county could delay the running of limitations indefinitely merely by not presenting its claim" which "is inconsistent with Texas law governing statutes of limitations." *Id.* at 585. The Court concluded that "the cause of action accrues when payment to the county is made because that is when the injury occurs, not when the claim has been presented to and rejected by the commissioners court." *Id.*[3]

Cox's refusal theory suffers from two fatal problems. First, as in *Trammel's*, Cox "could delay the running of limitations indefinitely merely by not presenting [his] claim" which "is inconsistent with Texas law governing statutes of limitations." *See*

---

[3] While *Trammel's* presents a statutory question, the Texas Supreme Court extended its holding to the takings context. *See Lowenberg*, 168 S.W.3d at 802. Distinguishing between accrual for a regulatory versus physical taking, the Court reasoned that "in cases asserting that a fee was unauthorized, state and federal courts generally date accrual just as we did in *Trammel's* from the date it was paid." *Id.*

*id.* Second, Cox conspicuously does not assert that he made a request for the property from the State before filing this suit, and neither his Complaint nor the record evidence show as much. After the Seventh Court's reversal, he went to the Receiver, who had the property, made a demand for its return, and then filed suit. CR.245-54. Per his Complaint, only after "Cox was unable to recover $219,238 of the funds recovered by the Receiver" did he file this suit against the State. CR.9. Cox's first "demand" to the State, then, was this lawsuit and the first "refusal" was the State's answer denying liability. Thus, under Cox's theory, the statute of limitations did not begin to run until *after* he filed suit—an impossible result.

From this erroneous premise, Cox attacks (at 15-17) the State's lack of proof regarding accrual. But the State explained (at 16) that his claim to the property arose either upon the Seventh Court's reversal or upon the Texas Supreme Court's denial of review. The State points to the evidence of those dates, State Br.16 (citing CR.246), which in any event would be subject to judicial notice, *see* Tex. R. Evid. Rule 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Off. of Pub. Util. Couns. v. Pub. Util. Comm'n of Tex.*, 878 S.W.2d 598, 600 (Tex. 1994) (per curiam) ("A court of appeals has the power to take judicial notice for the first time on appeal.").

Because Cox abandons all but the takings claim, which he did not bring within the two-year limitations period for personal property claims, all that remains is the state takings cause of action for real property (*i.e.*, the AOC ranch).

9

## II. Cox's State Takings Claim Fails.

The State argued (at 20-21) that Cox lacked standing to bring his claims because, according to his own sworn representations, he was made whole.[4] And the only possible damages were self-inflicted by his own litigation choices, including (1) to not post a proper supersedeas bond or accept the district court's invitation to consider lowering the bond requirement, and (2) to not object to the Receiver's motions to sell the property, including the AOC Ranch. State Br.21-23. The State further explained (at 36-40) that, even if Cox had standing, he failed to provide evidence that his takings claim was facially valid and thus cannot overcome sovereign immunity.

Cox responds (at 20-23) that he has standing because he was not "made whole" and asserts (at 17-19) that he adequately alleged a takings claim under Texas's notice pleading standards. Both points are wrong.

### A. Cox lacks standing.

**1.** As an initial matter, Cox misapprehends the standard. "A plea to the jurisdiction can take two forms: (1) a challenge to the plaintiff's pleadings regarding the allegations of jurisdictional facts, or (2) an evidentiary challenge to the existence of jurisdictional facts." *Curadev Pharma Pvt. Ltd. v. Univ. of Tex. Sw. Med. Ctr.*, No. 15-25-00004-CV, 2025 WL 2414661, at *2 (Tex. App.—Austin [15th Dist.] Aug. 21, 2025, pet. filed) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629,

---

[4] The State also explained (at 18-20) that it cannot discern Cox's claims as to the entities. Cox does not respond to these arguments. Cox's failure to articulate a cogent theory or identify authority or evidence to support his claims falls short of his burden to allege standing and a waiver of sovereign immunity.

635 (Tex. 2012)). This was an evidentiary plea, which required Cox to provide evidence that at least created fact questions regarding the elements of his claim. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227-28 (Tex. 2004).

As with his cross-appeal brief, Cox urges the Court (at 17-20) to rule on the pleadings and invokes the deferential "notice pleading" standard. But "when a plea to the jurisdiction challenges the existence of jurisdictional facts, we look beyond the pleadings and consider evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020) (internal quotation omitted). True, Cox gets the beneficial inferences when the Court weighs the competing evidence. *See Miranda*, 133 S.W.3d at 228; *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019). But even with those inferences, Cox disproves both his standing and the takings claim.

**2.** As the State explained (at 20-21), Cox lacks standing because the evidence shows he was made whole. Cox filed an affidavit with the district court clerk, which stated that his net worth before collection was $548,418.29, including exempt personal property (and $440,262.28 without). CR.117. The Receiver's collection and liquidation yielded $830,756, CR.225, and Cox ultimately received $611,518 directly or through the Personal Compromise, *see* CR.227, 338; State Br.20 (explaining calculation). $611,518 is more than $548,418. Cox's sworn affidavit disproves any financial injury. This applies to AOC ranch, too. *See* CR.484 (explaining that Cox valued the Real Property at $462,050 and received $850,000 for AOC Ranch).

Cox responds that he received "diminished proceeds" and "partial restitution." Cox Br.20-21. To this end, he provides two record cites. *See id.* at 20 (citing

CR.5-9, 525-28). The first cite covers half of his Complaint. The second is the first few pages of his response to the State's Combined Plea and Summary Judgment Motion. Cox does not explain how either of those pleadings contradict the evidence. *See Rangel*, 595 S.W.3d at 205; *see also In re Off. of Att'y Gen.*, No. 15-24-00106-CV, 2025 WL 2414653, at *2 (Tex. App.—Austin [15th Dist.] Aug. 21, 2025, orig. proceeding) ("Arguments of counsel are not evidence.").

He argues that "[t]he subsequent bankruptcy 'compromise' was compelled by the State's earlier enforcement actions, not anything that could be characterized as a 'voluntary litigation choice' — Cox did not voluntarily enter bankruptcy to address the State's enforcement efforts." Cox Resp. Br.22. Cox's point here is not clear. The State explained (at 21-24) that the litigation choices, inflicting the only possibly claims he might raise, are (1) his refusal to file a proper supersedeas or engage the court's offer to lower it, instead choosing to file two emergency challenges, and (2) his decision to not object to the motions to sell the property for which he now claims devaluation. In any event, the compromise did not impose either the liquidation-devaluation or receivership expenses and fees he now seeks, so this is a red herring. This instead confirms that the Receiver's collection efforts did not cause the bankruptcy. *See* State Br.25 (explaining that Cox "did not declare personal bankruptcy until May 2016, two years after the Seventh Court reversed the judgment against him in July 2014").[5]

---

[5] The State's Opening Brief then states that "[t]he record appears to indicate that his net worth was tied up in the value of the companies, which went to nearly zero after the DTPA judgment (later upheld by the Seventh Court)." State Br.25.  As a

He continues: "Cox also did not choose to allow the State to seize his property and sell it for a song" and he "should not be faulted to the degree his efforts to avoid injury were unsuccessful." Cox Resp. Br.22. But the State is not faulting him for his unsuccessful defense at trial. The State is raising the various post-trial decisions he made where he could have protected his rights but did not do so.

Cox provides that "[a]ccepting the State's argument would allow the State to seize an owner's home, hand the owner $1.00, and claim the owner therefore lacks standing to sue the State for taking his house." *Id.* at 23. But that oversimplified hypothetical bakes in many assumptions. For example, it assumes the homeowner provides evidence of the harm—*i.e.*, the difference between the actual value of the home and one dollar of compensation. Here, the State does not ask the Court to rely on its determination of value—though that would be sufficient if undisputed. *See Miranda*, 133 S.W.3d at 228 ("[I]f the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law."). Instead, the evidence of the value of his estate, which includes the property at issue, comes from Cox, not the State. CR.117-27.

Cox argues that "partial takings or permanent diminution of property rights are sufficient injuries to establish standing" and "the State concedes Cox has lost at least $219,238 in fees and expenses that were never returned." Cox Resp. Br.22-23 (citing State Br.19-20). The State acknowledged that the Receiver kept fees but explained

---

point of correction, the TaxMaster entities did not appeal the DTPA judgment. That misstatement affects only this assertion, which remains correct insofar as the companies' value went to nearly zero after the unappealed DTPA judgment.

(at 21-24) that these costs were self-inflicted, as they could have been avoided if Cox provided a supersedeas bond. Cox claims that he "attempted to post a bond, but state-court procedures prevented him from doing so." *Id.* at 22. But the trial court letter on this exact issue refutes his claim. CR.130-31. He chose to circumvent the process, which appropriately failed, and then chose not to accept the Court's invitation to do it properly. This is like defaulting on a judgment and then blaming the rules of civil procedure for imposing deadlines to respond.

Cox asserts, without supporting authority, that the State's self-inflicted injury cases stand for the limited proposition that "a plaintiff cannot manufacture standing by voluntarily incurring an injury to challenge a law." Cox Br.23-24. True enough, that was the application of the rule in *Murthy v. Missouri*, 603 U.S. 43, 73 (2024), which followed *Clapper v. Amnesty International USA*, 568 U.S. 398, 416 (2013). But the rule is not so limited. For example, the Fifth Circuit rejected standing for a voting rights organization on the basis that it expended fees in attempting to enforce Louisiana's compliance with applicable laws—because the State was not the source of those fees. *See Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999) ("*ACORN*") ("An organization cannot obtain standing to sue in its own right as a result of self-inflicted injuries, i.e., those that are not 'fairly traceable to the actions of the defendant.'" (quoting *Bennet v. Spear*, 520 U.S. 154, 162 (1997))). The Fifth Circuit applied the same reasoning from *ACORN* in *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018) and *Center for Biological Diversity v. United States Environmental Protection Agency*, 937 F.3d 533, 541 (5th Cir. 2019).

14

Cox's point actually highlights the entire problem here. If he had properly raised these claims on remand, the State would have responded with the appropriate procedural arguments (*e.g.*, preservation, law of the case, etc.). By improperly filing a new suit, however, he precludes these arguments. The court should not endorse the idea that two legal wrongs make a legal right.

Cox claims that "[h]is losses flowed directly from the State's enforcement of an erroneous judgment through a receivership sale and its subsequent refusal to restore or compensate him for the property taken." Cox Resp. Br.24. But the State did not appoint or control the receiver and never controlled the assets or funds that comprise the receiver fee. State Br.36-38. And Cox knew the State did not have the Receiver fees, as demonstrated by his decision to sue the Receiver first. CR.243-44. For the same reasons this was not a taking by the State, this injury is not traceable for standing purposes. *See* State Br.36-38.

## B. Cox cannot establish a taking by the State.

The State explained (at 36-40) that Cox's state-law takings claim is facially invalid because Texas never took nor received any assets and Cox's liability-by-consent theory does not meet the intent element imposed by the Texas Supreme Court. *See, e.g.*, *Texas Dep't of Transportation v. Self*, 690 S.W.3d 12, 26 (Tex. 2024) ("Although the Constitution does not expressly require an intentional act, … such a requirement helps ensure that the taking is for 'public use.'"). Cox responds that this "contention … goes to the merits" and "Cox is entitled to have his pleadings liberally construed in his favor." Cox Resp. Br.11-12; *see id.* at 24-25 (repeating the same).

As previously explained, the jurisdictional questions presented turn on the evidence. *Infra*.10-11. Cox cites *Miranda* for the proposition that "if pleadings allege facts which affirmatively demonstrate jurisdiction, the case should proceed" and contends that, "[b]ecause Cox's pleadings allege a facially valid constitutional claim, the trial court properly exercised jurisdiction over that claim." *Id.* at 24-25. But that captures only the first half of *Miranda*'s analysis. *See* 133 S.W.3d at 226-28 (explaining that a jurisdictional plea may challenge pleadings or the existence of jurisdictional facts); *Curadev Pharma Pvt. Ltd.,* 2025 WL 2414661, at \*2.

The Texas Supreme Court, meanwhile, provides that "[i]mmunity from suit is not waived if the constitutional claims are facially invalid." *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015). This Court recognizes as much. *See Rivera v. Sonnenschein*, 708 S.W.3d 294, 297 (Tex. App.—Austin [15th Dist.] 2025, pet. denied) ("[B]ecause 'immunity from suit is not waived if the constitutional claims are facially invalid,' we must examine the merits of [the] claims to the extent necessary to determine whether they are facially invalid." (quoting *Abbott v. Mexican Am. Legis. Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 698 (Tex. 2022))). For the reasons explained in depth in the State's opening brief (at 36-40) and summarized in the State's cross-response (at 7-9), Cox's state takings claim is not facially valid. Because Cox does not address these arguments, instead urging the Court to rule on the pleadings, the State incorporates by reference and rests on them.

## PRAYER

This Court should affirm the district court's order as to dismissal of the federal claims, reverse as to its denial of the plea, and render judgment dismissing the suit.

16

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-6407
Fax: (512) 474-2697

WILLIAM R. PETERSON
Solicitor General

/s/ Jacob C. Beach
JACOB C. BEACH
Assistant Solicitor General
State Bar No. 24116083
Jacob.Beach@oag.texas.gov

ALI THORBURN
Assistant Attorney General

Counsel for Appellant

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this brief contains 4,757 words, excluding exempted text.

/s/ Jacob C. Beach
NAME

# In the Court of Appeals
# for the Fifteenth Judicial District

### THE STATE OF TEXAS,

*Appellant/Cross-Appellee,*

*v.*

### PATRICK COX, FOR HIMSELF AND AS AGENT FOR AOC RANCHES, LLC; TEAM ADVERTISING SERVICES, INC.; CCLHR ENTERPRISES, LLC; AND VPIZZA RESTAURANT 001, LLC,

*Appellees/Cross-Appellants.*

On Appeal from the
419th Judicial District Court, Travis County

## APPENDIX

Defendant State of Texas's Motion to Transfer Venue, Original
Answer, and Affirmative Defenses to Plaintiffs' Complaint for
Restitution and Damages ...................................................................................1

**Tab 1: Defendant State of Texas's Motion to Transfer Venue, Original Answer, and Affirmative Defenses to Plaintiffs' Complaint for Restitution and Damages**

**1/23/2019 9:19 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-19-000436
Ruben Tamez**

Filed: 9/21/2018 12:37 PM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 27706958
By: Shailja Dixit
9/21/2018 4:52 PM

D-1-GN-19-000436

~~CAUSE NO. 18-CV-0409~~

| | | |
|---|---|---|
| PATRICK COX, FOR HIMSELF AND | § | IN THE DISTRICT COURT |
| AS AGENT FOR AOC RANCHES, | § | |
| LLC, TEAM ADVERTISING | § | |
| SERVICES, INC., CCLHR | § | ~~GALVESTON COUNTY, TEXAS~~ |
| ENTERPRISES, LLC and VPIZZA | § | TRAVIS CONTY, TEXAS |
| RESTAURANT 001, LLC, | § | |
| *Plaintiff*, | § | ~~405th JUDICIAL DISTRICT~~ |
| | § | 419TH DISTRICT COURT |
| vs. | § | |
| | § | |
| THE STATE OF TEXAS, | § | |
| *Defendant*. | § | |

## DEFENDANT STATE OF TEXAS'S MOTION TO TRANSFER VENUE, ORIGINAL ANSWER, AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT FOR RESTITUTION AND DAMAGES

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant, the State of Texas, files this Motion to Transfer Venue, and subject thereto,

Original Answer and Affirmative Defenses to Plaintiffs' Complaint for Restitution and Damages,

and would show the Court as follows:

## I. INTRODUCTION

This is a lawsuit for restitution and damages arising out of a judgment entered by the 200th

Judicial District Court of Travis County on June 5, 2012, in the matter of *The State of Texas,*

*Plaintiff v. TaxMasters, Inc., TMIRS Enterprises, Ltd., TM GP Services, LLC d/b/a TaxMasters,*

*and Patrick R. Cox, individually*, Cause No. D-1-GV-10-000486. *See* Plaintiffs' Complaint for

Restitution and Damages ("Compl."), at ¶ 7. Plaintiffs made a conclusory allegation that venue is

proper in Galveston County without any supporting facts. *See* Compl., at ¶ 6. However, Defendant

---

*Defendant the State of Texas's Motion to Transfer Venue, Original Answer, and*
*Affirmative Defenses to Plaintiff's Complaint for Restitution and Damages* Page 1

the State of Texas specifically denies that venue is proper in Galveston County because the general venue rule requires transfer to Travis County. *See* Tex. Civ. Prac. & Rem. Code § 1.002. Defendant the State of Texas hereby requests that the Court transfer venue of this case to Travis County.

## II.    VENUE FACTS

Plaintiff Patrick Cox is an individual who resides at 12335 Kingside Ln. #390, Houston Texas 77024. *See* Compl., at ¶ 3. Plaintiff Cox is the authorized agent for the interests of AOC Ranches, LLC, Team Advertising Services, Inc., CCLHR Enterprises, LLC, and VPizza Restaurant 001, LLC. *Id.*

Defendant, the State of Texas is domiciled in Travis County for purposes of venue. *Gulf Coast Business Forms, Inc. v. Texas Employment Commission*, 498 S.W.2d 154 (Tex. 1973). *See* Compl., at ¶ 4.

Plaintiffs seek restitution and damages from Defendant the State of Texas arising out of a judgment issued by the 200th Judicial District Court of Travis County on June 5, 2012, in the matter of *The State of Texas, Plaintiff v. TaxMasters, Inc., TMIRS Enterprises, Ltd., TM GP Services, LLC d/b/a TaxMasters, and Patrick R. Cox, individually*, Cause No. D-1-GV-10-000486. *See* Compl., at ¶ 7.

## III.    STANDARD OF REVIEW OF VENUE

The plaintiff to a lawsuit is generally permitted to choose the venue first, and that choice usually will not be disturbed if the county chosen is a county of proper venue under the Texas venue rules. *In re Team Rocket*, 256 S.W.3d 257, 259 (Tex. 2008); *Chiriboga v. State Farm Mut. Auto. Ins. Co.,* 96 S.W.3d 673, 678 (Tex. App.–Austin 2003, no pet.). However, a court must

"transfer an action to another county of proper venue if ... the county in which the action is pending is not a proper county." TEX. CIV. PRAC. & REM. CODE § 15.063(1); *see also* TEX. R. CIV. P. 87 (procedures for filing motion to transfer). Furthermore, "[i]f a defendant, through a venue transfer motion, objects to the plaintiff's venue choice, the plaintiff must prove that venue is proper in the county of suit." *In re Masonite Corp.,* 997 S.W.2d 194, 197 (Tex. 1999) (citing TEX. R. CIV. P. 87-2(a)); *see also WTFO, Inc. v. Braithwaite*, 899 S.W.2d 709, 714 (Tex. App.-Dallas, 1995). Venue facts are proven through pleadings and affidavits. TEX. CIV. PRAC. & REM. CODE § 15.064; TEX. R. CIV. P. 87(3)(a).

## IV. ARGUMENT AND AUTHORITIES

Travis County, not Galveston County, is the county of proper venue under the general venue rule applicable to this lawsuit. Under the general venue rule, Plaintiffs were required to bring suit (1) in the county where all or a substantial part of the events giving rise to the claim occurred; (2) in the county of the defendant's principal office in Texas, if the defendant is not a natural person; or (3) in the county where the Plaintiffs resided when the action accrued, if none of the other provisions apply. TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1)-(4). Plaintiffs failed to comply with the general venue rule by bringing suit in Galveston County.

As the Plaintiff's complaint makes clear, this case arose out of facts and circumstances from the judgment issued by the 200th Judicial District Court of Travis County on June 5, 2012, in the matter of *The State of Texas, Plaintiff v. TaxMasters, Inc., TMIRS Enterprises, Ltd., TM GP Services, LLC d/b/a TaxMasters, and Patrick R. Cox, individually*, Cause No. D-1-GV-10-000486. *See* Compl., at ¶ 7. Thus, the general venue rule, Plaintiffs were required to file this lawsuit in Travis County. *See* TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1). Venue is also proper in Travis

County because Defendant the State of Texas is domiciled for purposes of venue in Travis County. *Gulf Coast Business Forms, Inc.*, 498 S.W.2d at 154. *See* Compl., at ¶ 4. *See* TEX. CIV. PRAC. & REM. CODE § 15.002(a)(3). Moreover, the Plaintiffs reside in Harris County, which precludes venue in Galveston County under TEX. CIV. PRAC. & REM. CODE § 15.002(a)(4). Other than Plaintiffs' conclusory statement that venue is proper in Galveston County, they have alleged no facts supporting Galveston County as the proper venue for this lawsuit.

Accordingly, Galveston County is not the proper venue and the Court should transfer venue to Travis County.

## V. ORIGINAL ANSWER

Subject to Defendant the State of Texas's Motion to Transfer Venue, and pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant the State of Texas hereby generally denies each and every, all and singular, the allegations of Plaintiffs' Complaint for Restitution and Damages, and requires strict proof thereof.

## VI. AFFIRMATIVE DEFENSES

Pleading further, Defendant the State of Texas hereby asserts the following affirmative defenses to which it may be entitled:

1. Sovereign immunity from suit bars any and all of Plaintiffs' claims to which that defense may apply.

2. Sovereign immunity from liability bars Plaintiffs' recovery to such an extent that this affirmative defense may apply.

3.     Defendant the State of Texas asserts the affirmative defense of limitations for claims outside the applicable limitations period and for Plaintiffs' violations of any other timeliness requirements stated under the applicable statutes.

4.     Defendant the State of Texas asserts the affirmative defense of failure to exhaust administrative remedies for all claims to which it may apply.

5.     Defendant the State of Texas asserts the affirmative defense of res judicata and/or collateral estoppel barring Plaintiffs' claims.

6.     Plaintiffs' own acts and/or omissions caused or contributed to the Plaintiffs' injuries, if any.

7.     Plaintiffs have failed to mitigate their damages, if any.

8.     Defendant the State of Texas asserts that any alleged damages, which are denied, are subject to applicable statutory caps.

9.     Defendant the State of Texas asserts the right to raise additional affirmative defenses that become apparent throughout the factual development of this case.

## VII.     PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant the State of Texas respectfully requests that the Court grant its Motion to Transfer Venue and transfer this matter to Travis County. Defendant the State of Texas further prays that the Court dismiss Plaintiffs' claims with prejudice; that the Court enter judgment for Defendant the State of Texas and against Plaintiffs, holding that Plaintiffs take nothing by their suit; that all costs be taxed and adjudged against Plaintiffs; and that Defendant the State of Texas be granted such other and further relief to which it justly may be entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DAVID A. TALBOT, JR.
Acting Chief - General Litigation Division

/s/ *Summer R. Lee*
**SUMMER R. LEE**
Texas Bar No. 24046283
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4031 | FAX: (512) 320-0667
summer.lee@oag.texas.gov
**ATTORNEYS FOR DEFENDANT**
**THE STATE OF TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served electronically through electronic filing on this the 21st day of September, 2018, to:

Reese W. Baker
950 Echo Lane, Suite 200
Houston, Texas 77024
*Attorney for Plaintiff*

/s/ *Summer R. Lee*
**SUMMER R. LEE**
Assistant Attorney General

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Amanda Ruch on behalf of Jacob Beach
Bar No. 24116083
amanda.ruch@oag.texas.gov
Envelope ID: 107066805
Filing Code Description: Other Brief
Filing Description: Cox_Final
Status as of 10/21/2025 7:04 AM CST

Associated Case Party: Patrick Cox

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Reese Baker | 1587700 | courtdocs@bakerassociates.net | 10/20/2025 5:07:56 PM | SENT |

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Ali Thorburn | | ali.thorburn@oag.texas.gov | 10/20/2025 5:07:56 PM | SENT |
| Jacob Beach | | jacob.beach@oag.texas.gov | 10/20/2025 5:07:56 PM | SENT |
| Amanda Ruch | | amanda.ruch@oag.texas.gov | 10/20/2025 5:07:56 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Ariana Ines | | ariana.ines@oag.texas.gov | 10/20/2025 5:07:56 PM | SENT |